Filed April 3, 1889.

No. 12,836.

## THE EVANSVILLE AND INDIANAPOLIS RAILROAD COMPANY ET AL. *v.* HAYS, TREASURER.

TAXATION.—*Assessment.*—*Board of Equalization.*—*Power of to Make.*—Where the county board of equalization ordered certain railroad iron to be assessed for the purpose of taxation, ascertaining its value from the surveyor of customs in whose charge it was at the time, or from some other person not an officer of the railroad company, and the auditor, by direction of the board, made the entry on the assessor's roll, and afterwards entered it upon the treasurer's books, such an assessment is invalid, and does not create any lien on the property.

SAME.—*Valid Assessment.*—*What Constitutes.*—To constitute a valid assessment it must be made by the proper officer. There must, at least, be some attempt toward an assessment, and a compliance with the law by some officer authorized to make the assessment. The county board had no such authority in this instance.

SAME.—*Illegal Assessment.*—*Suit to Recover Taxes.*—Where there has been

The Evansville and Indianapolis Railroad Co. *et al. v.* Hays, Treasurer.

an illegal assessment, the county treasurer can not maintain an action to recover the taxes so illegally assessed. *Board, etc.,* v. *Armstrong,* 91 Ind. 528, and *Durham* v. *Board, etc.,* 95 Ind. 182, distinguished.

From the Vanderburgh Circuit Court.

*A. Iglehart, J. E. Iglehart* and *E. Taylor,* for appellants.
*W. F. Smith,* for appellee.

OLDS, J.—The facts, as stated by counsel for appellants, and not controverted by counsel for appellee, are : The Indianapolis and Evansville Railway Company was building a railroad from Evansville to Washington, Indiana. In order to build the road, the president and manager of the corporation imported steel rails from London to Evansville, via New York. Not being able to pay the freight and duties, the rails were warehoused, under the warehouse system of the Treasury Department, under the provisions of chapter 7, of the U. S. R. S. ; in lieu of an actual warehouse or place of storage, they were stored on the grounds of the E. & T. H. Railway Company, who had the rails in charge, with a lien for the carriage. They were taken charge of by the surveyor of the port, as unclaimed goods, under section 2965, U. S. R. S., and, by consent of all the parties, stored in the yard of the Evansville & Terre Haute Railway Company, and guarded by a watchman of the surveyor. While in that position an attempt was made to make an assessment upon them for State and county taxes for the year 1882. The railroad corporation being insolvent, the steel rails afterwards went into the hands of a receiver, and were sold, with the road-bed and other property, to the appellant, the Evansville and Indianapolis Railroad Company, a corporation organized by the shareholders and bondholders of the old corporation, who bought the road-bed, steel and fixtures, and assumed the payment of all liens. The appellee, being treasurer of the county, filed his claim, by an intervening petition, for the taxes which were alleged to be assessed. The intervening petition was pending when the property was sold, and there was a stipu-

lation by which it was agreed that the purchasers of the road-bed and steel should be subrogated to the rights of the receiver in the steel, and should assume his obligations as to liens.   After the sale of the steel, the county attorney withdrew the formal petition, and filed one in the nature of a complaint, to which the railroad company and receiver entered an appearance.   The proceedings were conducted with appellee as plaintiff and appellants as defendants.   Answers were filed and issues joined; trial and judgment against the Evansville and Indianapolis Railroad Company for the taxes. Appellants filed a motion for a new trial, which was over-ruled, and exceptions taken by appellants.   The question presented is as to the sufficiency of the evidence.   It was admitted, for the purpose of the trial, that in the months of October, November and December, 1881, there was shipped from the city of London to the city of New York about 3,061 tons 1,934 pounds of steel rails, consigned to the Indianap-olis and Evansville Railway Company; that said steel rails were subject to duty, being imported, and passing through New York, consigned to said railroad company, at Evansville, and subject to customs duty and freight from New York to Evansville; that when the said rails arrived at Evansville, there being no person to pay freight or duty on the same, they were taken charge of by the surveyor of the port at Evansville and stored as unclaimed goods; that said steel rails were, in June, 1882, of the value at Evansville of $55 per ton, or $169,000; that the duty amounted in the aggregate to $57,236.82; that the freight due upon said rails was the sum of $19,840.28, making a total of charges of $77,-077.10; that, while said steel rails were so held by the sur-veyor, in the custody of the government, for the payment of said customs dues, and liable to a lien for said sum for freights and charges thereon, to wit, on the 17th day of June, 1882, the auditor of Vanderburgh county made upon the assess-ment roll of Pigeon township the following entry :   "Ass'd by board of equlz., R. G. Hervey, iron in hands at E. & T.

H. R. R. grounds, $180,000," but that no entry or order in the minutes of the proceedings of the board of equalization, for the session of June, 1882, was recorded, nor does any other record of assessment appear; that the county auditor thereupon, afterwards, transferred said entry from the assessor's roll to the tax duplicate, in the following words: "No. 2724. R. G. Hervey, personal property; valuation, $180,000; total taxes, $1,440;" that said R. G. Hervey was president and general manager of the Indianapolis and Evansville Railway company; that afterwards, to wit, at the end of the year from the time said steel rails arrived at Evansville, the same were advertised by the surveyor of customs of the United States at the port of Evansville, for the payment of said duty, freight and charges; but before the sale, to wit, on December 12th, 1882, upon the claim of said railroad company, and upon giving proper bond, said steel rails were re-warehoused, and remained there until after the appointment of the defendant, Hepburn, as receiver, by the superior court of Vanderburgh county, in March, 1883; that said steel rails were taken from the custody of said surveyor of the port, and out of bond, and out of the control and custody of the United States authorities, and used in the building of the railroad for said railroad company during the summer and fall of 1883; that the defendant the Evansville and Indianapolis Railroad Company, a railroad corporation, had purchased the property of the Indianapolis and Evansville Railroad Company, and in such purchase had taken the railroad iron and steel described in the complaint under such purchase, and that by the purchase aforesaid said Evansville and Indianapolis Railroad Company had assumed to pay all liens upon said personal property, and that if said personal property was liable for State and county taxes in Vanderburgh county, for the time claimed in the complaint, plaintiff was entitled to recover the amount found due against said property, upon the complaint and the evidence, of and from the defendant the Evansville and Indianapolis Railroad Com-

pany; that the rate for taxation for State and county purposes for the year 1882 in Vanderburgh county, Indiana, was eighty cents on the hundred dollars.

It was then proved by parol testimony, over the objection of the appellants, that, at the meeting of the Vanderburgh county board of equalization, the matter of railroad iron in the yard was brought to the attention of the board, and the question of valuation was brought up; and the board, ascertaining the value from the surveyor, or some other person not an officer of the railroad company, ordered it assessed; and the auditor, by direction of the board, made the entry on the assessor's roll as hereinbefore set out, no entry being made in the minutes of the proceedings of the board.

There are two questions presented: First. Were the steel rails in controversy subject to taxation? and, Second. Were they properly assessed for taxation for State and county purposes for the year 1882? If they were not subject to taxation, or were not properly assessed for taxation, the appellee can not recover; and, in view of the opinion we entertain in regard to the latter question, it will not be necessary to consider the first. There is no controversy as to the fact that the only attempt to assess the property was made by the board of equalization; that, by the direction of the board, the auditor made the entry on the assessor's roll, and afterwards entered it upon the treasurer's books. In the case of *Kuntz* v. *Sumption*, 117 Ind. 1, this court held that the statutory provisions concerning the authority of the county board of equalization to increase the valuation of the property of an individual taxpayer, listed by him for taxation, are unconstitutional. In that case this court says: " We do not affirm that the provisions of the statute conferring authority upon the county board to change the general levy are invalid, nor do we affirm that they are invalid in so far as they confer authority to make orders affecting taxpayers generally. We do, however, affirm that they are invalid in so far as they assume to confer

authority upon the board to conclusively change the valuation placed upon property by an individual taxpayer, or to add property to his list." The attempted assessment of the steel rails by the board of equalization was invalid, and created no lien upon the property. It is insisted by counsel for the appellee that if the property was subject to taxation, it made no difference how it came to be placed upon the tax duplicate; that, whether there was any legal assessment or not, the appellant can not avoid the payment of the amount of taxes the property would be legally liable for if properly assessed, and cite the cases of *Board, etc.,* v. *Armstrong,* 91 Ind. 528, and *Durham* v. *Board, etc.,* 95 Ind. 182, as supporting this doctrine. We can not concur in the theory of the counsel. Both of the cases cited were actions brought to recover back taxes paid under irregular and illegal assessments, and the court held that having paid the taxes, and the property having been subject to taxation, they could not be recovered back. But a different rule applies where the tax has been paid and the action is to recover back than applies where the action is to recover the tax. If the rule insisted upon is made to apply in a case like this, then there is no necessity for an assessment at all; the county auditor may enter up such an amount of tax as he may deem proper against each taxpayer, and, if he fails to pay, the treasurer can bring an action and recover the amount he would have been liable for if properly assessed, for in this case the attempted assessment was without authority and was utterly void, and is the same as if no assessment had been made. The case of *Board, etc.,* v. *Senn,* 117 Ind. 410, is a case where there had been an assessment of real estate, and the board of equalization had increased the valuation in the township where Senn's real estate was situate fifteen per per cent., and after the board adjourned the auditor added twenty-five per cent. in addition and placed it upon the tax duplicate, and the taxpayer, Senn, paid such taxes and afterwards brought an ac-

tion to recover back the amount paid by reason of such illegal assessment by the auditor. It was claimed in that ·case, as the law provided that real estate should be assessed ·at its real value, that the land was worth the full amount of the valuation fixed by the auditor, and proof of the real value of the real estate was proper, and that if it was in fact ·worth what it had been valued at by the auditor, Senn ·could not recover back any of the taxes paid by reason of such increased valuation by the auditor; but this court held otherwise—that Senn was entitled to recover back the tax paid by reason of the amount added to the valuation by the auditor, and that proof of the value of the land was not proper. We do not hold that the law must be complied with in every minutia in order to enforce the payment of taxes, but there must at least be some attempt toward an assessment and a compliance with the law by some officer authorized to make the assessment.

Cooley on Taxation (2d ed.), chapter 12, pp. 351, 352, 353, speaking of assessments, says : "It does not, therefore, of itself lay the charge upon either person or property, but it is a step preliminary thereto, and which is essential to the apportionment." Again the same author says : "An assessment, when taxes are to be levied upon a valuation, is obviously indispensable. It is required as the first step in the proceedings against individual subjects of taxation, and is the foundation of all which follow it. Without an assessment they have no support, and are nullities. The assessment is, therefore, the most important of all the proceedings in taxation, and the provisions to insure its accomplishing its office are commonly very full and particular. The assessment being so important, the statutory provisions respecting its preparation and contents ought to be observed with particularity. They are prescribed in order to secure equality and uniformity in the contributions which are demanded for the public service, and if officers, instead of observing them, may substitute a discretion of their own, the most important

security which has been devised for the protection of the citizen in tax cases might be rendered valueless. The assessment must, therefore, be made by the proper officer, or it will be void."

In this case there was no attempt made to assess the property, except by the board of equalization, and the action taken by the board, under the authority we have cited, was void and of no effect. It does not appear from the record that any person connected with the railroad company had any knowledge that the board was inquiring into the matter or attempting to make any assessment. We express no opinion as to whether the property assessed is not railroad property, subject to being listed and assessed under the statutes regulating the listing and assessment of railroad property. The court erred in overruling the motion for a new trial.

Judgment reversed, at costs of appellee, and for further proceedings not inconsistent with this opinion.

